UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JOSEPH LEICHTNAM,<br><br>                    Plaintiff,<br><br>    vs.<br><br>AMERICAN ZURICH INS. CO., ZURICH<br>AMERICAN INS. CO., AND ZURICH<br>NORTH AMERICAN,<br><br>                    Defendants. | 5:15-CV-05012-JLV<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION TO COMPEL |

**INTRODUCTION**

This is a bad faith diversity action brought by Plaintiff, Joseph

Leichtnam, against Defendants, American Zurich Ins. Co., Zurich American

Ins. Co., and Zurich North American (hereinafter collectively referred to as

"Zurich"). (Doc. 1). Pending before the court is a motion filed by Leichtnam to

compel Zurich to provide certain discovery. (Doc. 38). The presiding district

judge, the Honorable Jeffrey L. Viken, Chief Judge, referred this motion to this

magistrate judge for a decision. (Doc. 37).

**FACTS**

The facts as pertinent to the pending motion are as follows. Leichtnam

sustained a work related injury to his back when he fell off a forklift on August

29, 2007. Leichtnam incurred medical expenses as a result of his work related

injuries. In May of 2009, Zurich arranged for Leichtnam to see Dr. Farnham

who opined that the Plaintiff's fall from the forklift did not cause anything other than some "post concussion headaches early on." (Doc. 1 at p. 2). Thereafter, Zurich ceased payments for Leichtnam's medical treatment. Leichtnam filed a petition with the Department of Labor. Leichtnam and Zurich negotiated a settlement of his worker's compensation claim.

Leichtnam thereafter initialed this civil diversity action against Zurich alleging bad faith. Leichtnam has included a request for punitive damages. Zurich denies that it acted in bad faith.

## DISCUSSION

## I. Whether Plaintiff Met and Conferred With Defendant

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1).

The moving party's motion may contain the equivalent of this certification in which the attorney "confirms that it has attempted in good faith to resolve this discovery dispute [with opposing counsel]" prior to filing the motion. See Highmark, Inc. v. Northwest Pipe Co., No. CIV 10-5089-JLV, 2012 WL 997007, *4 (D.S.D. Mar. 23, 2012). Leichtnam's motion contains a statement that it has met and conferred with opposing counsel. (Doc. 31).

"The purpose of the meet and confer requirement is to force litigants to attempt to resolve, or at least narrow, the disputed issues to prevent the

unnecessary waste of time and effort on any given motion." Robinson v.

Napolitano, No. CIV. 08-4084, 2009 WL 1586959, *3 (D.S.D. June 4 2009)

(internal quotations omitted) (citing Alexander v. Federal Bureau of

Investigation, 186 F.R.D. 197, 199 (D.D.C. 1999)).

The parties' briefing and exhibits set forth the actions taken by the

parties satisfies met the meet and confer requirements. The court will accept

this description as equivalent to the required certification and finds that

Leichtnam has satisfied its duty to confer in good faith with counsel for Zurich

to try to work out these differences before filing the instant motion. Therefore,

the court will consider the motion on its merits.

## II.    Scope of discovery

The scope of discovery for civil cases is set forth in Federal Rule of Civil

Procedure 26(b)(1) which provides as follows:

> Unless otherwise limited by court order, the
> scope of discovery is as follows: Parties may obtain
> discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and
> proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the
> importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed
> discovery outweighs its likely benefit. Information
> within the scope of discovery need not be admissible in
> evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

"A party seeking discovery is merely required to make a threshold

showing of relevance, which is more relaxed than the showing required for

relevance in the context of admissibility." Klynsma v. Hydradyne, LLC, No. CIV. 13-5016-JLV, 2015 WL 5773703, *16 (D.S.D. Sept. 30, 2015) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978)). The party resisting discovery must show specifically how each request is irrelevant or unduly burdensome. Klynsma, 2015 WL 5773703 at *16 (citing St Paul Reinsurance Co., 198 F.R.D. at 512).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970)(hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, ' 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D.

Neb. March 15, 2007) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." <u>Id.</u> (citing <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." <u>Id.</u> (citing <u>Cervantes v. Time, Inc.</u>, 464 F.2d 986, 994 (8th Cir. 1972).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. <u>See</u> FED. R. CIV. P. 26(b)(1). Additionally, the court may limit the frequency and extent of discovery. <u>See</u> FED. R. CIV. P. 26(b)(2); <u>see also</u> <u>Roberts v. Shawnee Mission Ford, Inc.</u>, 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); <u>Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Because he is seeking punitive damages, Mr. Leichtnam must show that Zurich acted with malice, actual or implied. <u>See</u> <u>Bertelsen v. Allstate Ins. Co.</u>,

2011 S.D. 13, ¶ 39, 796 N.W.2d 685, 698–99 (citing SDCL § 21–3–2). "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill-will towards that person." Id. at ¶ 40, 796 N.W.2d at 699 (quoting Biegler, 2001 S.D. 13, ¶ 45, 621 N.W.2d at 605). Implied malice can be inferred or imputed by law. Id. "Presumed malice may not 'be motivated by hatred or ill-will but is present when a person acts willfully or wantonly to the injury of others.' " Id . (quoting Biegler, 2001 S.D. 13, ¶ 45, 621 N.W.2d at 605). When a party seeks punitive damages, the jury must evaluate "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Roth v. Farner–Bocken Co., 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665–66 (citing State Farm v. Campbell, 538 U.S. 408, 418 (2003)). The jury may consider evidence that the harm caused to a plaintiff was a company policy or practice. Id. at ¶ 65, 667 N.W.2d at 669. With these claims in mind, the court turns to the instant discovery dispute.

## III. Requests for Production

### A. Request for Production 2: Personnel files

Plaintiff requests the entire personnel file for each person that handled or participated in his case in any way, as well as their supervisors and personnel in the chain of command. Plaintiff names fourteen specific individuals, as well as all of those individuals' supervisors and anyone else in the chain of

command.  Zurich provided personnel files of three of the named individuals—
Jason Sattler, Kimberly Duncan, and Amy Mueller—and requests that the
court limit the scope of plaintiff's request to only those individuals who had
significant contact with his file.  Zurich argues that nearly half of the
individuals that plaintiff identifies only touched the file one or two times.
Further, because those individuals had little to do with plaintiff's case, Zurich
argues their files would not have any relevant information.  Therefore, Zurich
argues plaintiff's request is irrelevant and overbroad, and asks the court to
limit the scope of the request to compel information only from individuals who
had significant contact with plaintiff's file. In his reply, Leichtnam reiterates
that he is entitled to anyone in the chain of command of upper level
management.

Well settled case law in this district establishes that personnel files in
bad faith actions have routinely been found to be relevant and discoverable.
Lyon v. Bankers Life & Cas. Co., CIV. 09–5070–JLV, 2011 WL 124629 at *8
(D.S.D. Jan.14, 2011)).  "Personnel files may reveal an inappropriate reason or
reasons for defendant's action with respect to plaintiff's claim or an 'improper
corporate culture.' " Id.  Furthermore, in cases where the insurance company
tried to limit discovery to the claims handler and his or her immediate
supervisor, that attempt has been rejected. See Nye v. Hartford Acc. & Indem.
Co., 2013 WL 3107492 at *11–12, Civ. No. 12–5028 (D.S.D. June 18, 2013);
Kirschenman v. Auto–Owners Ins., 280 F.R.D. 474, 482–83 (D.S.D.2012); Hill
v. Auto Owners Ins. Co., No. 5:14-CV-05037-KES, 2015 WL 1280016, at *8

(D.S.D. Mar. 20, 2015).  As was noted in <u>Fair v. Royal & Sun Alliance</u>, the evidence of institutional pressure that was brought to bear on an insurance company's claims handlers was not in the personnel file of the claims handler herself, nor was it in her immediate supervisor's file; rather, the entirely relevant evidence was found in the personnel file of the regional claims manager.  <u>Fair v. Royal & Sun Alliance</u>, 278 F.R.D. 465, 474–76 (D.S.D.2012).

Leichtnam has made his initial showing of relevance of the discovery request.  The burden then shifts to defendant to show specifically how each interrogatory or request for production of document is not relevant or how each request is overly broad, burdensome, or oppressive.  Zurich's position as outlined above fails to show irrelevance. Furthermore, the request is limited to the fourteen individual who accessed the file as well as those persons in the chain of command up to the Senior Vice-President of Claims. The court finds the scope to be reasonable in nature and not overly broad, burdensome, oppressive.

The court grants Leichtnam's motion to compel as it relates to request for production number 2.  However, the court authorizes defendant to redact any sensitive information from the documents produced such as addresses, phone numbers, dates of birth, and social security numbers.

### B.      Request for Production 4: Compensation records

Plaintiff requests documents showing all compensation to any of the individuals described in Request No. 2, from January 2002 to the present. Zurich provided compensation records for Sattler, Duncan, and Mueller.

Zurich responds that, like Request No. 2, many of the persons identified had only one or two interactions with plaintiff's file. Therefore, Zurich requests the same relief as Request No. 2: that the court limit the scope to only those individuals who had significant contact with the file.

Courts in this District have held that "[q]ualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a claim, is certainly relevant to a bad faith claim." *Lyon,* 2011 WL 124629 at *10 (citing *Pochat v. State Farm Mut. Auto. Ins. Co.,* CIV 08–5015, 2008 WL 5192427, *5 (D.S.D. Jan. 11, 2008) ("such information [regarding employee award and financial bonus program is] ... relevant to plaintiff's bad-faith insurance and breach of contract claims....")). Employee bonus plans can also be relevant to an award of punitive damages in an insurance bad faith case. *See id.* (citing *Torres v. Travelers Ins.,* CIV 01–5056 (Docket 327, pp. 29–31, 43) (D.S.D.2009); *see also Lillibridge v. Nautilus Ins. Co.,* CIV 10–4105, 2013 WL 1896825 at *11 (D.S.D. May 3, 2013).

Here, the request is limited to the persons who accessed Leichtnam's file (14 people) as well as those persons in the chain of command. The court disagrees with Zurich that this request is overly broad. For these reasons and the reasons stated in Section III.A, Leichtnam's motion to compel as it relates to request for production number 4 is granted. The court authorizes defendant to redact any sensitive information from the documents produced such as addresses, phone numbers, dates of birth, and social security numbers.

## C.    Request for Production 5: Employee expectations concerning compensation

Plaintiff requests all documents made available to inform the persons named in Request No. 2 of the manner in which they can expect to receive additional compensation and policies dictating the manner in which Zurich undertakes performance evaluations.   Plaintiff requests all such files from January 2002 to the present.  Zurich provided performance evaluations and the relevant policy for Sattler, Duncan, and Mueller.  Zurich responds that, like Requests No. 2 and 4, this request requires information about persons that had little contact with plaintiff's file.  Zurich also argues that the request is overbroad because it requires over sixteen years of compensation information, from years before Zurich's involvement with plaintiff.   For these reasons, Zurich asks the court to narrow the request to encompass only those who had significant contact with plaintiff's file, and reduce the timeframe.

"It is well established in this district that information about bonuses and increases for upper-level employees is generally discoverable in cases alleging that an insurance company acted in bad faith in denying an insured's claim in violation of South Dakota law." Hurley v. State Farm Mut. Auto. Ins. Co., No. CIV. 10–4165–KES, 2012 WL 1600796, at *4 (D.S.D. May 7, 2012); see also Lillibridge, 2013 WL 1896825, at *11 (granting request to compel production for any bonus, compensation, or incentive documents for any "claim personnel [,]" incentive goals and how they relate to manager bonuses, and "[a]ny and all documents which relate to incentives given to claims examiners or managers" for any reduction in payouts); Kirschenman, 480 F.R.D. at 486 (requiring

production of information on "all bonus and awards which it made available for any person up the chain of command"); *Lyon,* 2011 WL 124629, at *9–10 (granting motion to compel request for "[a]ny and all ... documents that reference bonus programs applicable to any long term care claims department personnel ..." and for all documents "which inform long term care claims personnel of the manner in which they can expect to get increases in salary, bonuses, or commissions"); <u>Dziadek v. Charter Oak Fire Ins. Co.</u>, No. CIV 11-4134-RAL, 2014 WL 820049, at *12 (D.S.D. Mar. 3, 2014).

Thus, the documents sought by Leichtnam are relevant and discoverable. However, the court finds that the request should be limited to a ten year period of time. The alleged bad faith occurred from 2007 through 2013; two previous years and two subsequent years surrounding this time frame is reasonable. Therefore, for the reasons stated in Section III.A and this section, the court grants the motion to compel limited to the time frame of 2005 through 2015.

### D.  Request for Production 6: Short-term incentive plans or "scorecards"

Plaintiff requests any documents reflecting that Zurich considers the amount paid out in claims when evaluating employees' compensation. Plaintiff asks that this information be provided for all individuals identified in Request No. 2, from January 2002 to the present. Zurich responds that the request lacks specificity. Plaintiff references "scorecards" and short-term incentive plans ("STIP") documents, but Zurich asserts it is unable to identify or locate the requested documents. Moreover, the motion contains plaintiff's first specific request for STIP documents. Zurich further states that the breadth of

the request makes it difficult or impossible to determine what information is relevant.  Therefore, Zurich asks the court to deny or narrow the request.

Scorecards are discoverable in bad faith cases.  <u>Dziadek v. Charter Oak Fire Ins. Co.</u>, No. CIV 11-4134-RAL, 2014 WL 820049, at *13 (D.S.D. Mar. 3, 2014).  The documents sought by Leichtnam are relevant and discoverable; Zurich shall produce these documents for the time period of 2005 through 2015.

**E.      Request for Production 7: Supplemental compensation exhibits**

Plaintiff requests Zurich's supplemental compensation exhibits provided to state regulators from January 2002 to the present.  Zurich responds that the requested filings are confidential and filed under seal with state regulators; further, the filings are not personnel files.  Therefore, Zurich argues the <u>Hill v. Auto Owners Ins. Co.</u>, 14-CV-5037 (D.S.D. Mar. 20, 2015) analysis that plaintiff references does not apply.   Zurich asks the court to deny the request.

"Like a personnel file, bonus and incentive information for the directors or officers as upper-level employees of defendant companies is also relevant and discoverable when an insurance bad faith claim is alleged."  <u>Burke v. Ability Ins. Co.</u>, 291 F.R.D. 343, 352 (D.S.D. 2013).  The documents sought by Leichtnam are relevant and discoverable.  Any concern regarding the confidential nature of the documents can be addressed by a protective order, if need be.  Zurich shall produce these documents for the time period of 2005 through 2015.

**F.    Request for Production 8: Employee goals, targets, or objectives documentation**

Plaintiff requests all documents relating to goals, targets, or objectives set for any of the persons named in Request No. 2, or for worker's compensation claims generally, from January 2002 to the present.  Zurich states that it provided a responsive answer, in the form of initial evaluations, best practices, and training documentation; therefore, Zurich argues further response is unnecessary.  Zurich also repeats its previous response, that many of the named individuals had insignificant contact with plaintiff's file.  If the court grants the motion to compel as to this request, Zurich asks the court to limit employee evaluations to those with relevant and discoverable information.

Documents referring to goals, targets, or objectives for claim payments are relevant to bad faith claims and are discoverable in this District.  <u>See</u> <u>e.g.</u>, <u>Lillibridge</u>, 2013 WL 1896825, at *11; <u>Lyon</u>, 2011 WL 124629, at *10. ("Claims ratios are inherently tied to bonus programs.").  For the reasons stated in Section III.A, Section III.C and herein, Zurich shall produce these records for the time frame of 2005 through 2015.

**G.    Request for Production 10: Guiding documents for handling worker's compensation claims**

Plaintiff requests all documents that the individuals identified in Request No. 2 could use to guide them in handling worker's compensation claims, including claim manuals, best practice guidelines, procedure guides, operation manuals, supervision manuals, workshop materials, bulletins, or management directives.  Plaintiff requests documents from between January 2002 to the

present.  Zurich states that it already provided best practice guides, which is responsive to this request.  Zurich requests that the court deny the motion as to this request, because it provided an adequate response and was unaware of any alleged deficiency with that response until plaintiff filed the motion to compel.  Zurich doesn't argue that the Claims Knowledge Center is entirely irrelevant and not discoverable; instead, it simply asserts that it contains additional information which Leichtnam has failed to show is relevant. Zurich's arguments are without merit.  Withholding relevant and discoverable documents simply because they obtain some items which the defendant views are irrelevant is contrary to the federal rules of discovery.  Zurich shall produce these documents for the time period of 2005 through 2015.

**H.    Request for Production 11: Training and education materials on handling worker's compensation claims**

Plaintiff requests all training and education materials related to handling worker's compensation claims that Zurich provided to the individuals identified in Request No. 2, since January 2005.  Leichtnam then identifies documents which he is aware that Zurich possess, yet failed to produce.  Zurich states that it already provided best practice guides, which is responsive to this request.  Zurich requests that the court deny the motion as to this request, because it provided an adequate response and was unaware of any alleged deficiency with that response until plaintiff filed the motion to compel.  Zurich also argues that Leichtnam's request lacks specificity.  Zurich does not assert that the items outlined in Leicthnam's brief are irrelevant.  For the reasons stated above, Zurich shall produce these documents for the time frame of 2005

14

through 2015, which are identified in Leichtnam's brief, as well as, any other training and education material responsive to this request.

## I.     Request for Production 12: Deposition and trial transcripts

Plaintiff requests all deposition and trial transcripts of any officer, or individual identified in Request No. 2, in any extra-contractual suit arising out of the handling of a worker's compensation claim. Plaintiff requests transcripts from January 2002 until the present. Zurich responds that the request is even more broad than Request No. 2, in that it asks for transcripts from "any of [Zurich's] officers," who could include any officer who left Zurich well before plaintiff's claim, as well as the fourteen previously-identified individuals. Zurich therefore asks the court to deny the motion to compel, or limit the timeframe of the request and order plaintiff to specify the individual officers from whom he seeks information.

Zurich's arguments are without merit and contrary to the case law of this jurisdiction. In <u>Lyon v. Bankers Life and Cas. Co.</u>, the court stated:

> Testimony of defendant's officers or personnel in previous litigation is, by its very nature, public testimony in an adversarial environment to which neither the attorney-client privilege nor the attorney-work product privilege could attach. A transcript of that testimony is not privileged.
>
> Defendant has the benefit of access to the transcripts of the depositions of its officers or other personnel who have testified in cases relating to claims of denial or discontinuation of benefits under long-term care insurance policies. The information would certainly be available to defendant to assist in preparing its witnesses and defense to this plaintiff's claims. The information is readily available to defendant and is very difficult, if not impossible, for plaintiff to obtain. The piecemeal process of obtaining this information by plaintiff would be extremely costly

and contrary to the cause of providing a "just, speedy, and inexpensive determination of every action...." Fed.R.Civ.P. 1.

The court agrees that any prior testimony by defendant's employees on denial of long-term care benefits may be relevant to this action. The uses of this prior testimony may include, among other uses:

1. Revealing similar events of claim processing by this defendant.

2. Discovery of prior adverse rulings against this defendant on the same issues being disputed in this case.

3. Revealing prior declarations by defendant's personnel regarding the interpretation of claims manuals, other claims protocol, bonus or award programs, or claims quality assurance.

4. Revealing internal procedures for other relevant conduct in handling long-term care policies.

5. Cross-examination of defendant's employees disclosed as witnesses in this action.

The cost to defendant of producing these documents is minor in comparison to the burden placed on plaintiff if she is required to gather this material on a piecemeal basis. It is far more efficient to require defendant to disclose what is already in its possession or under its control and allow plaintiff access to this material.

Lyon v. Bankers Life & Cas. Co., No. CIV. 09-5070-JLV, 2011 WL 124629, at

*12–13 (D.S.D. Jan. 14, 2011). Leichtnam's request is relevant and

discoverable; therefore, Zurich shall produce the requested documents.

**J.      Request for Production 16: Company newsletters**

Plaintiff requests all company newsletters available to all worker's

compensation claim personnel involved in handling or supervising plaintiff's

claims since January 2005. Zurich notes that this court in the past granted

16

requests for newsletters, but under a much narrower scope in subject matter and timeframe.  Zurich therefore requests the court to deny the motion or, in the alternative, limit the request in time and substance.  Well settled case law in this jurisdiction establishes the that company newsletters are relevant and discoverable.  <u>Kirschenman v. Auto-Owners Ins.</u>, 280 F.R.D. 474, 487 (D.S.D. 2012).  Zurich shall produce the requested newsletters from the period of 2005 through 2015.

**K.      Request for Production 17: Claims training documents**

Plaintiff requests all documents made available to the individuals in Request No. 2 with the purpose of training, guiding, or assisting in unfair claims practices, good or bad faith claim handling, wrongful claims handling, or extra-contractual suits or damages, from January 2002 to the present. Zurich states that it already produced its best practice guide and the California training documents, all of which are responsive to this request.  Zurich asks the court to deny the request because its answer was responsive, because the alleged deficiencies weren't contained in its meet and confer letter, and because plaintiff failed to make more than a cursory showing of relevance.

These documents are relevant and discoverable.  For the reasons stated in Sections III.A, III.G. and III.H, Zurich shall produce the requested documents.

**L.      Request for Production 19: IME guides**

Plaintiff requests all documents available to the individuals in Request No. 2 relating to the purposes and benefits of obtaining IME services; the

criteria and method for deciding when to seek an IME; the criteria and method for selecting an IME provider; the criteria and method for verifying credentials of IME providers; and the criteria and method for verifying the examiner's independence. Zurich states its best practices guide is responsive to the request. Further, like Request No. 10, Zurich states this request and any alleged deficiencies were omitted from plaintiff's meet and confer letter; therefore, Zurich was unaware of any issues with its response. For these reasons, Zurich asks the court to deny the request.

These documents are relevant and discoverable. For the reasons stated in Sections III.A, III.G., III.H and III.K, Zurich shall produce the requested documents.

**M.     Request for Production 20: IME reports**

Plaintiff requests all IME or record review reports that Zurich obtained from Dr. Jerry Blow or Dr. Richard Farnham since January 1, 2000. Zurich responds that the request is overly broad and largely irrelevant, because plaintiff's IME occurred in 2009. If the court grants plaintiff's request, Zurich asks that the court limit the scope of the request to end at the date of plaintiff's IME; order the redaction of any patients' personal identifiers; and subject produced information to the Protective Order entered in this case. Plaintiff objects to the documents being produced in a redacted format.

In <u>Gowen v. Mid Century Ins. Co.</u>, the court addressed a similar discovery request. The court found the information to be relevant and discoverable and could properly be produced without infringing on any privacy

18

rights by redacting personal identifiers.  309 F.R.D. 503, 516-517 (D.S.D. 2015).  The court finding a similar approach to be reasonable.  Zurich shall produce the requested documents during the time frame of 2005 through 2015, subject to the court's protection order and *partial* redaction of personal identifiers, in that Zurich shall leave the patient's initials unredacted for ease of organization and comprehension.

### N.    Request for Production 21: Payments to Dr. Blow and Dr. Farnham

Plaintiff requests documents showing the amount of payments that Zurich made to Drs. Blow and Farnham since January 1, 2000, as well as the vendor code identifying each doctor.  Plaintiff also requests information concerning payments made to any third-party vendor for either doctor's services.  Zurich responds that, for the same reasons identified in Request No. 20, the request is overbroad and irrelevant.  Zurich asks the court to deny the request or, in the alternative, limit the time frame and scope of the request to end at the date of plaintiff's treatment.

These documents are relevant and discoverable.  Zurich shall produce these documents for the time frame of 2005 through 2015.

### O.    Request for Production 22: All documents referencing "IME"

Plaintiff requests all documents from January 2005 to the present which include the search terms "independent medical examination," "independent medical exam," "independent medical exams," or "IME," excluding individual claim files.  Plaintiff limits his request to documents from any hard drive or electronic storage device accessible to company personnel involved in claim

analytics. Zurich raises a number of objections to the request. First, Zurich argues the request is unduly burdensome because it seeks documents from Zurich's entire record-keeping system, as well as any other electronic storage devices used by the pertinent individuals. Zurich further argues the request is overbroad in its timeframe. Finally, because the request seeks a very broad category of documents containing certain keywords, Zurich states the search results could likely contain irrelevant documents. For these reasons, Zurich asks the court to deny the request or, in the alternative, reduce the scope to a narrower timeframe.

"The use of specific words or key phrases in electronic searches of computerized claim files has been approved historically in this district." Lyon, 2011 WL 124629, at *11 (citing McElgunn v. CUNA Mutual Grp., Civ. No. 06–5061, Docket 84 at 2–3 (D.S.D.2007); Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 323 (D.S.D.2009)); see also Burke v. Ability Ins. Co., 291 F.R.D. 343, 356 (D.S.D. 2013). The search terms "independent medical examination," "independent medical exam," "independent medical exams," or "IME," are relevant to Leichtnam's bad faith claim. Zurich shall produce these documents for the time frame of 2005 through 2015.

**P.      Request for Production 23: All documents referencing "Maximum Medical Improvement"**

Plaintiff requests all documents from January 2005 to the present which include the term "Maximum Medical Improvement" or "MMI," excluding individual claim files. Like his previous request, plaintiff asks for documents from any hard drive or electronic storage device accessible to company

personnel involved in claim analytics. Because the request seeks similar information to Request No. 22, Zurich repeats its argument from that request and asks the court to deny the motion. For the reasons stated in Section III.P, Zurich shall produce these documents for the time frame of 2005 through 2015.

### Q. Request for Production 24: Documents relating to Rommesmo Companies and all successor companies

Plaintiff requests all documents related to polices issued to Rommesmo Companies and/or its successor companies, as well as all declarations or information related to the policies' terms and retention limits, premiums assessed, loss experience, and any special account status between Zurich and Rommesmo Companies, excluding information from individual claim files. Zurich states that it provided responsive documents, and argues that plaintiff broadened his request in the motion by now seeking all "documents relating to contracts and communications" with Rommesmo. For these reasons, Zurich requests that the court deny the motion. In his reply, plaintiff argues that Zurich only provided one policy, ignored the remainder of the request, and that its new request for contract-related documents falls within the omnibus request for "all . . . information" related to the polices' terms and retention limits.

Leichtnam's motion to compel is granted only to the extent that if there are any such documents that have not been produced, it immediately must make reasonable and thorough efforts to identify documents either in paper or

electronic form that are responsive to Leichtnam's request and to supplement its response if additional documents become known to it at a later date.

## IV. Attorney's Fees and Costs

Plaintiff requested attorney's fees pursuant to Federal Rule 37(a)(5)(A) and (C). (Doc. 34 at p. 47). Here, the motion to compel was granted in part and denied in part. Further, Plaintiff failed to follow D.S.D. Local Rule 54.1(C)'s instructions regarding filing a motion for attorney's fees and costs and therefore, the request for attorney's fees is denied without prejudice.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that plaintiff's motion to compel (Doc. 31) is granted in part and denied in part as more specifically described above. It is further

ORDERED that plaintiff shall provide the requested discovery within 21 days of the date of this order.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson

v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 30th day of September, 2018.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge