# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| Joseph E. Leicthnam,<br><br>Plaintiff,<br><br>v.<br><br>American Zurich Insurance Company,<br>Zurich American Insurance Company,<br>And Zurich North America,<br><br>Defendants. | Case No. 5:15-cv-05012-JLV<br><br>PLAINTIFF'S RESPONSE TO ZURICH'S STATEMENT OF OBJECTIONS TO DKT. 120, MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING THE DENIAL OF ZURICH'S MOITON TO DISMISS |

## INTRODUCTION AND STANDARD OF REVIEW

This brief responds to Zurich objections (Doc. 126) to the Magistrate's Report and Recommendation (Doc. 120) to deny Zurich's Motion to Dismiss brought under Rule 12(c) and 12(h)(2)(B) (Doc. 53).

Rule 72(b) controls a district court's review of a magistrate's dispositive recommended dispositions, providing for de-novo determination of any part of the magistrate judge's disposition that has been properly objected to.[1]

Zurich raises three objections to the Magistrate's Report. Zurich challenges the determinations that:

---

[1] Fed. R. Civ. P. 72(b).

1

(1) Plaintiff exhausted administrative remedies;

(2) viewed in a light most favorable to plaintiff, the complaint and settlement agreement set forth facts suggesting that plaintiff's eligibility for benefits has been established; and

(3) Zurich waived defenses of release and res judicata by failing to properly raise them in its Answer.

## I. The Magistrate correctly concluded plaintiff exhausted Administrative remedies.

Zurich first says the Magistrate erred by treating the 2013 worker's compensation settlement agreement – approved by order of the Department of Labor -- the same as a final decision by the Department.[2] But the Magistrate's conclusion is amply supported by well-established South Dakota law.

The South Dakota Supreme Court has repeatedly held that "[c]ompromise agreements permitted under SDCL 62-7-5 have the same force and effect as adjudicated awards."[3]

Zurich says these rulings don't apply here because they don't address exhaustion of administrative remedies for purposes of bringing a bad faith action.

---

[2] Doc. 126, p. 2.

[3] *Sopko v. C&R Transfer Co.*, 1998 S.D. 8 ¶9, 575 N.W.2d 225, 229; *Larson v. Sioux Falls School Dist. No. 49-5,* 509 N.W.2d, 703, 706 (S.D. 1993).

2

Instead, Zurich argues, *Zuke v. Presentation Sisters, Inc.* controls the issue here.[4] Zurich says *Zuke* requires a bad faith plaintiff to first go through a hearing and obtain a ***decision*** by the South Dakota Department of Labor confirming both eligibility for benefits, as well as the specific dollar amount owed.[5] But *Zuke* doesn't say any of that.

Instead, *Zuke* says that the exhaustion doctrine "precludes a state court from exerting jurisdiction over a claim that has not yet reached the final stages of the administrative process."[6] The plaintiff in *Zuke* filed a bad faith claim without first bringing any claim before the Department of Labor. Unlike this case, no settlement occurred, nor did the insurer stipulate to its own liability for benefits. No departmental approval of a stipulated agreement took place.[7] On these facts, the Supreme Court held:

> This Court is convinced that Zuke should have presented her claim to the Department of Labor before proceeding to court with a bad faith cause of action. Before a trial court may grant relief for a bad faith denial of worker's compensation benefits, it must decide whether the plaintiff is entitled to benefits. ***This***

---

[4] *Zuke v. Presentation Sisters, Inc.*, 1999 S.D. 31, 589 N.W.2d 925 (S.D. 1999).

[5] Doc. 126, p. 4. Zurich cites no authority for its claim that the dollar amount must also be decided, and plaintiff hasn't found any either.

[6] *Zuke*, at 929. ¶17.

[7] *Id.*

3

> ***threshold issue must be decided within the worker's compensation forum.*** [8]

Zurich claims the words "*must be decided*" means it must be decided *by the Department of Labor*. But again, *Zuke* doesn't say that. It merely says the issue must be decided *within the worker's compensation forum.*

When a claimant initiates an action for benefits before the department, and the action is resolved by the insurer stipulating to pay benefits, followed by the Department's order approving the agreement, the issue has thus been decided *within the worker's compensation forum.* If the Supreme Court in *Zuke* meant to limit exhaustion solely on a decision *by the department*, it could easily have said so. It didn't.

Moreover, the Court has repeatedly held that an approved worker's compensation settlement agreement constitutes a "final order" of the department.[9] With a final order, exhaustion is complete.

---

[8] *Id.* at 930 ¶22. (emphasis added).

[9] *Chittendon v. Jarvis,* 66 SD 5, 297 N.W. 787, 790 (SD 1941)(parties' worker's compensation settlement agreement equivalent to a final award); *Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8 ¶17, 575 NW2d 225, 1998 SD 8, *9 ("workers' compensation awards whether by agreement or adjudication are final unless the Department reserves jurisdiction"); *Continental Western Insurance Company v. South Dakota Subsequent Injury Fund,* HF No. *137,2007/08* (SD Dept Labor, 2008)(Department's approval of Settlement and Release regarding the workers' compensation claim is a "final decision" by the Department); *Barber v. MWP Construction, Inc. and Acuity Mutual Ins. Co.* HF No. 16, 2010111 (SD Dept. Of Labor 2015)("settlement agreement has the same effect as a prior Department decision and determination").

Finally, once settlement is reached, there is nothing left to exhaust. A claimant has no right to seek a hearing on settled issues. SDCL 62-7-12 allows a hearing only when the parties fail to reach agreement:

> If the employer and injured employee ... fail to reach an agreement in regard to compensation ... either party may notify the Department of Labor and Regulation and request a hearing....[10]

Likewise, unless the agreement and order specifically reserve the Department's jurisdiction over specific matters, settlement eliminates the Department's jurisdiction to conduct a hearing.[11] Once further proceedings become impossible, exhaustion is complete, because the U.S. Supreme Court and the Eighth Circuit both hold that the exhaustion doctrine doesn't require pursuit of remedies that an administrative agency has no authority to provide.[12]

---

[10] SDCL 62-7-12.

[11] See *Rapid City Professional Hockey, LLC. v. Joseph Grimaldi*, HF No. 157, 2011/12, SD Wrk. Comp. LEXIS 8 (SD Dept. Labor July 10, 2012)(" ... the Department's review of this matter is only authorized if the parties fail to reach agreement as to the compensability of an alleged injury."); *Larsen v. Sioux Falls School Dist.*, 509 N.W.2d 703, 706 (SD 1993).(settled law establishes that work comp awards, whether by agreement of the parties or following adjudication, are res judicata as to all matters considered when the department has reserved continuing jurisdiction over one or more questions.)

[12] *Bartlett v. United States Dept of Ag.*, 716 F.3d 464, 472-73 (8th Cir. 2013)("The Supreme Court has identified specific circumstances that render an administrative remedy futile. For example...'an agency may be competent to adjudicate the issues presented, but still lack authority to grant the type of relief request.'" citing *McCarthy v. Madigan*, 503 U.S. 140, 147-48, 112 S.Ct. 1081 (1992).

5

Zurich cites decisions from other jurisdictions for the proposition that settlement agreements do not satisfy exhaustion requirements.[13] Those cases are easily distinguishable. They involve entirely different statutory and regulatory frameworks that do not give settlement agreements the same finality and enforceability the South Dakota worker's compensation scheme does here.

For instance, Zurich cites *Batchelor v. Rose Tree Media School Dist.* which deals with the "Individuals with Disabilities Education Act" (IDEA).[14] Under the IDEA, district courts lack subject matter jurisdiction unless IDEA procedures are first completed.[15] In *Batchelor,* plaintiffs intentionally failed to initiate those procedures, let alone complete them.[16]

Likewise, *Smith v. Rockwood R-VI Sch. Dist.,* and *S.A.S. ex rel. W.S. v. Hibbing Public Schools,* also involve claims falling under IDEA, and the lack of subject matter jurisdiction that occurs when its procedures aren't followed.[17]

---

[13] Doc. 126, P. 5.

[14] *Batchelor v. Rose Tree Media School Dist.*, 759 F.3d 266 (3rd Cir. 2014).

[15] *Id.* at 268.

[16] *Id.*

[17] *Smith v. Rockwood R-VI Sch. Dist.*, (No. 4:16-CV-1226, 2017 U.S. Dist. LEXIS 66462, at *13, 2017 WL 1633065 (E.D. Mo. May 2, 2017)) and *S.A.S. ex rel. W.S. v. Hibbing Public Schools,* (unreported, 2005 WL 1593011, * 1 (D.Minn. 2005).

*Fair v. U.S. Postal Service* involved an EEOC complaint, which plaintiff settled before obtaining a right-to-sue letter. Plaintiff later filed an action in federal court, and among other things argued breach of the settlement agreement, but the court found plaintiff's complaint "completely devoid of any allegations" that the Postal Service breached the agreement, so it dismissed that claim without prejudice.[18]

These decisions give no guidance here, where the statutory framework and caselaw recognize administratively approved settlement agreements as having the same force and effect as a final decision of the Department of Labor.

## II. The Magistrate Judge correctly concluded the allegations in the complaint -- combined with the terms of the settlement agreement -- preclude judgment on the pleadings

Zurich says the Magistrate's R & R is inconsistent with the law because it recommends denial of Zurich's motion -- without concluding that the settlement agreement establishes plaintiff's eligibility *as a matter of law*. Zurich says unless the Court rules that plaintiff's eligibility for benefits is established as a matter of law, plaintiff hasn't exhausted.[19]

Zurich's argument fails to recognize that the magistrate was addressing only the narrow question raised by Zurich's motion here – whether to dismiss on the

---

[18] *Fair v. U.S. Postal Service,* (unreported decision, 2013 WL 3443012, *3 (D.N.C. 2013)).

[19] Doc. 126, p. 2.

7

pleadings. "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law."[20] "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party."[21] The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.[22]

These standards don't require rulings on the merits -- nor do they require rulings on differing interpretations of a contract.[23] The magistrate looked at the settlement stipulation language Zurich pointed to and correctly observed that reasonable inferences exist that support plaintiff's position, and it is unclear whether Zurich's interpretation of that language is the only reasonable interpretation.[24] Further, the law is clear that ambiguities in a contract preclude

---

[20] *Mills v. City of Grand Forks,* 614 F.3d 495, 497–98 (8th Cir.2010) (citing *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir.2002)).

[21] *Id.*

[22] *Westcott,* 901 F.2d 1486, 1488 (citing *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999)).

[23] *Pearlstone v. Costco Wholesale Corp.,* No. 4:18CV630 RLW, 2019 WL 764708, at *6 (E.D. Mo. Feb. 21, 2019) (interpretation of disputed contract provisions beyond the scope of a motion to dismiss under Rule 12(b)(6)). *Covanta Hennepin Energy Res. Co., LLC v. Cty. of Hennepin,* No. 16-3086(DSD/HB), 2016 WL 7155737, at *3 (D. Minn. Dec. 7, 2016) (disputed contract interpretations make dismissal under Rule 12(b)(6) inappropriate).

[24] Doc. 120, p. 10-12.

judgment on the pleadings.[25] That doesn't mean the magistrate reached the question of whether the language relied on by Zurich actually controls the outcome here – or that the contract is ambiguous -- it merely means that the language Zurich points to falls short of showing Zurich is entitled to judgment as a matter of law. That is all the magistrate was required to decide based on Zurich's motion.

Similarly, Zurich objects to the Magistrate viewing the papers "in a light most favorable" to plaintiff. It says this "obliquely" applies the doctrine of *contra proferentem* to the written agreement. That's incorrect. The Magistrate is merely applying the standard applicable to motions to dismiss on the pleadings.

More importantly, the Magistrate also rejected Zurich's claims that the complaint, combined with the settlement agreement, unambiguously show that plaintiff failed to establish benefit eligibility in the administrative proceedings. The magistrate says: "it is clear that in a light most favorable to Leichtnam that both parties contemplated entitlement to benefits, regardless of if the parties agreed on the exact amount of benefits owed."[26] That conclusion is well supported.

---

[25] *Denton Const. Co. v. Missouri Portland Cement Co.*, 659 F.2d 873, 874-875 (8th Cir. 1981).

[26] Doc. 120, p. 11.

For instance, the introductory recitals of the settlement agreement begin by saying:

> 2. On or about August 26, 2007, claimant sustained injuries to his back, neck and head arising out of and in the course of his employment with employer.
>
> 3. As a result of the work-related injuries set forth in paragraph 2, insurer has paid medical expenses on behalf of claimant pursuant to 62-1-1... .[27]

After the recitals, the agreement continues on with the following stipulations concerning liability for plaintiff's medical expenses:

> 6. Based on the foregoing, claimant and employer and insurer stipulate as follows:
>
>     a. As a result of the injury of August 26, 2007, employer and insurer have paid employee's medical expenses, temporary disability benefits, and permanent partial disability benefits.
>
>     \*          \*          \*
>
>     c. Employer and insurer *shall remain liable for, and process and pay*, all compensable medical expenses pertaining to claimant's work-related injuries as set forth in Paragraph 2 above in conformance with the provision of South Dakota's worker's compensation law, including, but not limited to SDCL 62-4-1.[28]

---

[27] Doc. 55-1, pp. 2-4.

[28] Doc. 55-1, p.4, ¶6(c); SDCL 62-4-1 states: Medical and hospital expense. The employer shall provide necessary first aid, medical, surgical, and hospital services, and other suitable and proper care...during the disability or treatment of an employee within the provision of this title.

10

> d. There are various outstanding medical expenses including a prescription for an orthotic, an inversion table and medications prescribed by Dr. Lawlor as well as physical therapy expenses. Claimant specifically reserves his right to seek payment for these expenses from Employer/Insurer.

The stipulations in paragraph 2 -- that claimant sustained injuries "arising out of and in the course of his employment" – establish work-relatedness.[29]

The stipulations in paragraph 3 -- "as a result of the work-related injuries set forth in paragraph 2, insurer has paid medical expenses ... pursuant to 61-1-1," -- reinforce eligibility for payment of these expenses under the worker's compensation statutes.

But most importantly, Zurich admits liability for these expenses in subparagraph (c) -- saying "insurer shall remain liable for and process and pay, all compensable medical expenses pertaining to claimant's work-related injuries as set forth in Paragraph 2 above."

In attempting to disavow its stipulations above, Zurich now points to paragraph 5 of the introductory recital, which precedes the actual stipulations:

> ***Disputes exist*** between Employee and Employee and Insurer ***as to the extent*** of the compensability of employee's head, neck and back injuries ***and the amount of his entitlement to additional disability benefits and/or retraining benefits***, if any, due as a result of his work-related injuries. After undertaking discovery, the parties have agreed to settle and resolve the claims in conformance with the terms hereinafter set forth.[30]

---

[29] Doc. 55-1, p. 2, ¶2.

[30] Doc. 55-1, p. 2, ¶5.

These recitals in the preamble of the agreement loosely describe the events leading up to the settlement stipulations. But the actual stipulations say that Zurich "shall remain liable for, and process and pay, medical expenses related to the injury.[31]

Courts must "give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation."[32] Zurich asks the Court to interpret the entire agreement based on one sentence in the preliminary recitals, while ignoring Zurich's admission of liability in the body of the agreement. The "disputes exist" language in the preamble doesn't trump the actual stipulations.

Zurich argues that "public policy has long favored the resolution of disputes through settlement rather than through litigation, and statements made during settlement discussions are generally inadmissible to prove liability."[33] But the formal settlement stipulations here are not mere discussions about settlement. They are formal statements signed by Zurich's representative admitting that plaintiff suffered a work-related injury, and Zurich "shall remain liable for"

---

[31] Doc. 55-1, p. 3 ¶6(c).

[32] *Lillibridge v. Meade School Dist. #46-1*, 2008 S.D.17, 746 N.W.2d 428, 432 (S.D. 2008). Kernelburner, LLC v. MitchHart Mfg., 2009 SD 33, 765 NW 2d 740, 742.

[33] Doc 126, p. 7. citing Fed. R. Evid. 408(a)(2), 408(b) advisory committee's note. *Lamar Advertising of South Dakota, Inc., v. Kay*, 2010 WL 758786 (D.S.D. 2010).

medical expenses.[34] Thus, Zurich's focus on the "disputes exist" language in the recitals, the "last antecedent rule", or the placement of commas, makes no difference to the issue here – which is whether the settlement stipulations established plaintiff's entitlement to medical expenses.

Zurich also complains that by considering the allegations of the complaint alongside the settlement agreement, the magistrate improperly considered extrinsic evidence to interpret the agreement.[35] Once again, Zurich ignores the fact that it asks the Court to dismiss on the pleadings. It cannot complain when the Court considers the allegations in plaintiff's complaint. Moreover, the R & R clearly discusses the settlement agreement terms on their own, and finds that language less than clear enough to grant dismissal of the allegations in plaintiff's complaint.

Zurich argues that the agreement simply reflects a reasoned choice to save money by settling versus litigation. That may be true with respect to issues such as retraining benefits, or <u>the extent</u> of disability payments, but not medical expenses -- which is why the agreement says Zurich "shall remain liable" for them.

Zurich says plaintiff's bad faith claim "requires him to establish entitlement to benefits from 2009 (when they were terminated) to 2012 (when they were

---

[34] Doc. 55-1-¶¶5-6.

[35] Doc. 126, p. 8-9.

reinstated prior to the 2013 settlement agreement)."[36] This statement -- that medical benefits were reinstated prior to the 2013 settlement agreement -- directly undermines Zurich's entire thesis here. Zurich is arguing that plaintiff's entitlement to medical expenses remains in question even after the settlement in 2013, but now admits it reinstated plaintiff's medical benefits even before the settlement in 2013. Now consider the settlement agreement language saying Zurich "shall remain liable" for plaintiff's medical expenses. These facts directly contradict Zurich's arguments that it is entitled to judgment on the pleadings.

Zurich next argues that the agreement releases all of plaintiff's claims to medical expenses for the period of 2009-2012. Once again, Zurich points to one sentence of the agreement, to the exclusion of other language carving out exceptions to that same sentence. The agreement first notes "there are various outstanding medical expenses," and gives several examples.[37] Then it says "claimant specifically reserves his right to seek payment for these expenses from employer/insurer."[38] Following that, the agreement continues by providing that *"with the exception of future medical expenses as outlined in paragraph 6(c) and the outstanding medical expenses outlined in paragraph 6(d)*, claimant hereby

---

[36] Doc. 126, p. 11.

[37] Doc. 55-1, p. 3, ¶6(d).

[38] *Id.*

fully and forever releases…any and all claims he may now have or hereafter may have….[39] In other words, plaintiff did not release his claim to the medical benefits at issue here.

Zurich also artificially narrows plaintiff's bad faith claim to 2009-2012. In reality, Zurich terminated payment for plaintiff's medical care in 2009 and told him he was entitled to no further care -- permanently. That forced plaintiff to hire a lawyer and resist, or else lose the right to medical expenses for the rest of his life. The period of 2009-2012 was only a fraction of the coverage at stake. This bad faith case involves Zurich's attempted denial of lifetime benefits, not just 2009-2012.

### III. Zurich waived the defense of release and res judicata

Finally, Zurich says the magistrate erred in finding that Zurich waived the defenses of release and res judicata. The magistrate held that Rule 8(c) clearly states "[i]n responding to a pleading a party *must* affirmatively state any avoidance or affirmative defense, including:…release; res judicata…."[40] "Pleading the

---

[39] *Id.* at ¶7.

[40] Doc. 120, p. 12, citing *Krull v. Jones*, 46 F.Supp.2d 997, 1002 (D.S.D. 1999)(quoting *U.S. v. Metropolitan St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040,1043 (8th Cir. 1992)("res judicata is not a jurisdictional issue; rather, it is an affirmative defense that may be waived by the party allowed to assert it.");(*United States v. Ringling*, No. 17-CV-4006 (KES), 2017 WL 3738477, at *1(D.S.D. Aug. 30, 2017)(referring to release as an affirmative defense).

15

affirmative defenses of release and res judicata are not optional as Zurich would purport, they are mandatory."[41]

Rather than addressing these mandatory requirements, Zurich devotes the final six pages of its brief to arguing that the Magistrate should have granted it's motion to amend it answer three years after the deadline expired.[42] In other words, the last six pages of its brief here merely duplicate the arguments made in Doc. 125. Plaintiff has already replied separately to Doc. 125, and will not repeat his response here.

Moving back to the subject at hand, the magistrate properly refused to consider affirmative defenses that hadn't been properly pled.

## CONCLUSION

Plaintiff has presented more than enough factual allegations to survive a motion to dismiss on the pleadings. Zurich is not entitled to judgment as a matter of law.

Dated this 15th day of October, 2019.

/s/ Mike Abourezk
Abourezk Law Firm
PO Box 9460
Rapid City, SD 57709
T: (605) 342-0097
mike@abourezk.com

---

[41] *Id.* at 13.

[42] Doc. 120, p. 13.

16

## CERTIFICATE OF SERVICE

I hereby certify that, on October 15, 2019, I caused the above pleading to be electronically filed with the Clerk of the Court through the CM/ECF system with an electronic copy to be sent to all counsel of record.

Dated this 15th day of October, 2019.   /s/ Mike Abourezk
Abourezk Law Firm
PO Box 9460
Rapid City, SD 57702
T: (605) 342-0097
mike@abourezk.com